UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEE REGENT,

                        Plaintiff,

        v.

TOWN OF CHEEKTOWAGA,
TOWN OF CHEEKTOWAGA POLICE DEPARTMENT,
RONALD ZIEMBA, Individually and as an Agent
 for the Town of Cheektowaga and the Town of
 Cheektowaga Police Department,
MICHAEL DOROBIALA, Individually and as an
 Agent of the Town of Cheektowaga and the Town
 of Cheektowaga Police Department,

                        Defendants.

_____

**REPORT**
**and**
**RECOMMENDATION**

**03-CV-0347A(F)**

APPEARANCES:        MATUSICK, SPADAFORA & VERRASTRO
                        Attorneys for Plaintiff
                        RICHARD E. UPDEGROVE, of Counsel
                        101 Niagara Street
                        Buffalo, New York 14202-2705

                        DAMON & MOREY, LLP
                        Attorneys for Defendants
                        MARYLOU KATHRYN ROSHIA,
                        BRIAN A. BIRENBACH, of Counsel
                        298 Main Street
                        1000 Cathedral Place
                        Buffalo, New York 14202

## <u>JURISDICTION</u>

       This case was referred to the undersigned by Honorable Richard J. Arcara on

May 16, 2003, for report and recommendation on dispositive motions.  The matter is

presently before the court on Defendants' motion for summary judgment (Doc. No. 8),

filed October 29, 2004.

**BACKGROUND**

Plaintiff Lee Regent ("Plaintiff" or "Regent") commenced this civil rights action on December 9, 2002, in New York Supreme Court, Erie County, alleging Defendants Town of Cheektowaga ("the Town"), Town of Cheektowaga Police Department ("the Police Department"), Ronald Ziemba ("Ziemba"), and Michael Dorobiala ("Dorobiala"), violated Plaintiff's civil rights in connection with Plaintiff's arrest at his home on September 12, 2001.  In particular, Plaintiff asserts six causes of action, including (1) false arrest, Complaint ¶¶ 8-11; (2) unlawful search and seizure, Complaint ¶¶ 12-14; (3) malicious prosecution, Complaint ¶¶ 15-19; (4) failure to train, Complaint ¶¶ 20-22; (5) creating and maintaining a policy of searching, seizing and arresting and prosecuting persons without justification or probable cause, Complaint ¶¶ 23-33; and (6) gross negligence, Complaint ¶¶ 34-36.[1]  Plaintiff asserts all causes of action as in violation of unspecified portions of the United States Constitution, the New York Constitution and New York law, with the exception of the Fourth Cause of Action which Plaintiff asserts is in violation of the Fourth and Fourteenth Amendments, and Article I, Section 12 of the New York Constitution.

Defendants were served with the summons and Complaint on April 3, 2002.  On April 29, 2003, Defendants, pursuant to 28 U.S.C. §§ 1441 and 1446, removed the action asserting the presence of a federal question as the basis for jurisdiction under 28 U.S.C. § 1331.  Defendants filed an answer on May 13, 2003.

On October 29, 2004, Defendants filed the instant motion seeking summary

---

[1] Plaintiff erroneously fails to title his First Cause of Action as such.  However, a plain reading of the Complaint establishes that ¶¶ 8-11 are intended as Plaintiff's First Cause of Action.

judgment (Doc. No. 8) ("Defendants' Motion").  In support of the motion, Defendants

submitted an attached Memorandum of Law ("Defendants' Memorandum"), Rule 56

Statement of Facts ("Defendants' Fact Statement"), and various exhibits ("Defendants'

Exh(s). __").  In opposition to summary judgment, Plaintiff filed on December 22, 2004,

a Memorandum of Law (Doc No. 10) ("Plaintiff's Memorandum"), the Affidavit of

Richard E. Updegrove, Esq. (Doc. No. 11) ("Updegrove Affidavit"), with attached

Exhibits A through E ("Plaintiff's Exh(s). __"), Plaintiff's Rule 56 Statement (Doc. No. 12)

("Plaintiff's Fact Statement"), and the Affidavit of Lee Regent (Doc No. 13) ("Plaintiff's

Affidavit").  In further support of summary judgment, Defendants filed on January 7,

2005, a Reply Memorandum of Law (Doc. No. 15) ("Defendants' Reply").  Oral

argument was deemed unnecessary.

Based on the following, Defendants motion for summary judgment should be

GRANTED.


## **<u>FACTS</u>**[2]

On September 12, 2001, at 5:30 P.M., Plaintiff Lee Regent ("Plaintiff" or "Regent"),

dined with a friend at a restaurant located in Cheektowaga, New York, consuming

chicken wings and beer.  Regent left the restaurant at 8:30 P.M. and drove in his vehicle

toward his residence located at 49 Baywood Drive in Cheektowaga.  While driving

along Baywood Drive toward his residence, Plaintiff collided with a parked vehicle, but

left the scene of the accident without reporting it to any law enforcement official, and

---

[2] Taken from the pleadings and motion papers filed in this action.

proceeded to drive to his residence, entered his home and went to sleep.

At 8:40 P.M., Cheektowaga Police Department Officers Ronald Ziemba ("Officer Ziemba") and Michael Dorobiala ("Officer Dorobiala") (together, "Defendant Police Officers"), were dispatched to an address on Baywood Drive in response to a reported hit and run accident.  Upon arriving at the scene, Officer Ziemba observed two damaged parked vehicles, and spoke with one Darren Zelaski ("Zelaski"), Regent's neighbor who witnessed and reported the accident to the police.  According to Zelaski, Regent struck both parked vehicles, exited his vehicle to view the damage, told Zelaski he intended to pay for the damage, then reentered his vehicle and drove a couple of houses further along Baywood Drive where Regent parked his vehicle and entered his residence.  Zelaski reported that Regent had difficulty walking and appeared intoxicated.

Officer Ziemba then proceeded to Regent's house, knocked on the door, rang the doorbell and attempted to elicit a response by shouting.  Ziemba heard a loud noise as though someone had fallen to the floor emanating from within the house, shaking the front door's doorframe and rattling windows.  Ziemba resumed knocking and the front door swung open as though it had not been latched from inside.  Officer Ziemba stepped through the open front door and entered the house, shouting "hello" and "police."  There was no response and Ziemba waited for Officer Dorobiala before proceeding further.  When Officer Dorobiala arrived a few minutes later, he was advised by Ziemba of the situation, and Dorobiala and Ziemba decided to search the home to ascertain whether Regent had been injured and perhaps in need of some assistance.

While searching the home for Regent, the Dorobiala and Ziemba continued to

shout to both announce their presence and identify themselves as police officers. Eventually, the officers came upon a closed door to a room at the back of the house. Upon opening the door, the officers observed Regent lying in bed.  Regent appeared startled as though he had not heard the officers knocking or shouting.

Regent reeked of alcohol, his eyes were glass and his speech slurred.  Officers Dorobiala and Ziemba directed Regent to dress and then brought Regent outside to perform field sobriety tests.  After the tests, Regent was arrested for driving while intoxicated in violation of New York Vehicle and Traffic Law ("N.Y. Veh. & Traf. Law")[3] § 1192[3], refusing to take a pre-screen test in violation of N.Y. Veh. & Traf. Law § 1194[2](b), and leaving the scene of an accident without reporting property damage, in violation of N.Y. Veh. & Traf. Law § 600[1][a].

The lawfulness of Regent's arrest was litigated in a pretrial hearing pursuant to *Payton v. New York*, 445 U.S. 573, 603 (1980) ("*Payton* hearing"),[4] held on January 31, 2002, before Cheektowaga Town Court Justice Ronald E. Kmiotek ("Justice Kmiotek"). Testifying at the *Payton* hearing were Officers Dorobiala and Ziemba.  Regent, represented by Richard E. Updegrove, Esq. ("Updegrove"), was present, but Regent did not testify at the *Payton* hearing.  Nevertheless, Updegrove presented argument on Regent's behalf and cross-examined Dorobiala and Ziemba.  Following the *Payton* hearing, Justice Kmiotek, in a decision dated March 21, 2002, held that both probable

---

[3] References to N.Y. Veh. & Traf. Law are to "McKinney 1996."

[4] The purpose of a *Payton* hearing is to determine whether the warrantless entry into a suspect's home to effect an arrest is supported by both probable cause and exigent circumstances.  *See Payton v. New York*, 445 U.S. 573, 603 (1980).

cause and exigence circumstances existed to justify the warrantless entry into Regent's residence as well as Regent's arrest. In particular, Justice Kmiotek found that Officers Dorobiala and Ziemba did not violate Plaintiff's right to privacy by entering Plaintiff's residence without a warrant given that the loud noise Officer Ziemba heard upon arriving at the home and knocking on the door and ringing the doorbell, and in consideration of the fact that Ziemba was aware that Plaintiff was likely intoxicated based on the report of eyewitness Zelaski, supported Ziemba's stated concern that Plaintiff may have fallen through a door or window and was, perhaps, injured. March 21, 2002 *Payton* hearing decision. Defendants' Exh. C at 2.

Regent's refusal to submit to chemical testing necessitated Regent attend a Department of Motor Vehicles ("DMV") license revocation hearing ("license revocation hearing"). At the DMV license revocation hearing, held before DMV administrative law judge Dennis Ciotuszynski ("the ALJ") on August 7, 2002, Officers Dorobiala and Ziemba appeared and testified. Regent, represented by Richard E. Updegrove, Esq., also was present and was invited to testify, but declined. Instead, Mr. Updegrove presented oral argument on Regent's behalf. Following the licence revocation hearing, the ALJ ruled against Regent, thereby finding there was probable cause to support Regent's warrantless arrest, and revoked Regent's driver's license. On September 5, 2002, Regent was acquitted of all charges following a jury trial.

## DISCUSSION

**1.   Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party

6

demonstrates that there are no genuine issues as to any material fact and that a

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The

court is required to construe the evidence in the light most favorable to the non-moving

party.  *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson, supra*,

477 U.S. at 255).  The party moving for summary judgment bears the burden of

establishing the nonexistence of any genuine issue of material fact and if there is any

evidence in the record based upon any source from which a reasonable inference in the

non-moving party's favor may be drawn, a moving party cannot obtain a summary

judgment.  *Celotex, supra*, 477 U.S. at 322; *see Anderson*, *supra*, at 247-48 ("summary

judgment will not lie if the dispute about a material fact is "genuine," that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party").

In assessing a record to determine whether there is genuine issue of material fact, the

court is required to resolve all ambiguities and draw all factual inferences in favor of the

party against whom summary judgment is sought.  *Rattner*, *supra*, 930 F.2d at 209.

"[W]here the nonmoving party will bear the burden of proof at trial on a

dispositive issue, a summary judgment motion may properly be made in reliance solely

on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'

Such a motion, whether or not accompanied by affidavits, will be 'made and supported

as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving

party to go beyond the pleadings and by her own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate 'specific facts showing

that there is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 323-24 (1986)

(quoting Fed. R. Civ. P. 56).  Thus, "as to issues on which the non-moving party bears

the burden of proof, the moving party may simply point out the absence of evidence to

support the non-moving party's case."  *Nora Beverages, Inc. v. Perrier Group of*

*America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  Once a party moving for summary

judgment has made a properly supported showing as to the absence of any genuine

issue as to all material facts, the nonmoving party must, to defeat summary judgment,

come forward with evidence that would be sufficient to support a jury verdict in its favor.

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Although a summary judgment motion may be made with or without supporting

affidavits, if affidavits are submitted, they "shall be made on personal knowledge, shall

set forth such facts as would be admissible in evidence, and shall show affirmatively

that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P.

56(a).  Rule 56 further provides that

> [w]hen a motion for summary judgment is made and supported as provided in
> this rule, an adverse party may not rest upon the mere allegations or denials of
> the adverse party's pleading, but the adverse party's response, by affidavits or
> as otherwise provided in this rule, must set forth specific facts showing that there
> is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

"However, if the motion for summary judgment is not made and supported as provided

in Rule 56, the Rule does not impose on the party opposing summary judgment an

obligation to come forward with affidavits or other admissible evidence of his own."  *St.*

*Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (reversing granting of summary

judgment in favor of defendant because defendant failed to allege factual basis for

assertions contained in defendant's affidavit such that plaintiff, as the party opposing

summary judgment, was not required to adduce evidence to defeat summary judgment

and the "self-serving" nature of plaintiff's affidavit statements went to the weight of the

statements, rather than to their admissibility).

In the instant case, Defendants argue in support of summary judgment that

Plaintiff cannot, as a matter of law, prevail on his claims because the determination that

probable cause and exigent circumstances justifying both the warrantless entry into

Regent's home and Regent's subsequent warrantless arrest in both the *Payton* hearing

and the DMV license revocation hearing must be given preclusive effect and bars

Plaintiff's claims for false arrest, false imprisonment and malicious prosecution under

both the United States and New York Constitutions.  Defendants' Memorandum at 4-8.

Defendants also argue that the undisputed facts establish the Defendant Police

Officers' warrantless entry into Plaintiff's home was justified by emergency

circumstances and the need to preserve evidence.  Defendants' Memorandum at 8-17;

Payton Hearing Decision, Defendants' Exh. C, at 2.  Defendants further seek summary

judgment on Plaintiff's due process claim on the basis that Plaintiff has failed to

demonstrate that he was deprived of any procedural due process rights, *id*. at 17, as

well as Plaintiff's equal protection (discriminatory enforcement) claim because Plaintiff

is unable to allege any facts suggesting that Defendants intentionally misinterpreted a

statute and then targeted Plaintiff based on a misapplication of the misinterpreted

statute.  *Id*. at 17-18.  Defendants seek summary judgment on Plaintiff's § 1983 claims

against Defendants Town and the Police Department for lack of evidence of any

custom or policy required to find such municipal Defendants liable. *Id*. at 18-19.

9

Defendants move for summary judgment on Plaintiff's claims under the New York Constitution because such claims are identical to Plaintiff's claims under the United States Constitution, New York does not provide for a private right of action for state constitutional torts where an alternative tort remedy is available, the probable cause supporting the warrantless entry into Plaintiff's residence, as well as Plaintiff's arrest, render Plaintiff's New York common law claims of false arrest, false imprisonment and malicious prosecution without merit, and general negligence is not recognized in New York where the underlying challenged conduct is an arrest, imprisonment or prosecution. *Id*. at 19-23.  Finally, Defendants maintain Officers Ziemba and Dorobiala are qualifiedly immune from liability in the instant action.  *Id*. at 23-24.

In opposition to summary judgment, Plaintiff argues the undisputed facts establish that his warrantless arrest as unlawful because it was not supported by probable cause, exigent circumstances, or any emergency situation.  Plaintiff's Memorandum at 1-4.  Plaintiff further maintains that he is not collaterally estopped from challenging his arrest as made without probable cause because neither the January 31, 2002 *Payton* hearing, nor the DMV license revocation hearing constituted the requisite "final judgment" necessary to support application of the collateral estoppel doctrine, and new evidence, including Plaintiff's acquittal of the charges of leaving the scene of the accident, DWAI and DWI, precludes the application of collateral estoppel.  *Id*. at 4-7. As to Plaintiff's § 1983 claims for false arrest and malicious prosecution, Plaintiff asserts that the unlawfulness of his arrest demonstrates that factual issues exist regarding his arrest precluding summary judgment.  Plaintiff's Memorandum at 8.

In further support of summary judgment Defendants reassert their argument that

Plaintiff is collaterally stopped from challenging in the instant action the probable cause determination following both the January 31, 2002 *Payton* hearing, and the DMV license revocation hearing.  Defendants' Reply at 1-4.  Defendants also argue the warrantless entry into Plaintiff's residence was justified under the circumstances. *Id*. at 4-6.


2.      **Plaintiff's § 1983 Claims**

Although not specifically denominated as such, Plaintiff's claims for false arrest, false imprisonment, malicious prosecution, and denial of due process and equal protection in violation of the United States Constitution arise under 42 U.S.C. § 1983 ("§ 1983").  In particular, § 1983 "provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  By its terms, § 1983 provides that an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States.  42 U.S.C. § 1983.  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright*, *supra*, at 271 (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140).  Here, although Plaintiff has not alleged the source of the specific constitutional rights he alleges Defendants infringed, a fair reading of the Complaint establishes that Plaintiff's false arrest and false imprisonment claims arise under the Fourth Amendment, and the claims for malicious prosecution, and denial of due process and equal protection arise under the Fourteenth Amendment.

### A.      Probable Cause and Collateral Estoppel

A finding of probable cause to support an arrest will defeat both state and federal

constitutional claims for false arrest, false imprisonment and malicious prosecution.

*Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45-46 (2d Cir. 1985).  As

such, the court first addresses whether the probable cause determinations resulting

from the January 31, 2002 *Payton* hearing, and the DMV license revocation hearing

collaterally estop further litigation on the issue in the instant action.

Defendants assert that the issue of probable cause to enter Plaintiff's residence

and arrest him following the hit and run accident on September 12, 2001, was resolved

at both the January 31, 2002 *Payton* hearing, and the August 7, 2002 DMV license

revocation hearing, and that resulting probable cause findings thus collaterally estop

any further litigation on the issue.  Defendants' Memorandum at 4-8; Defendants' Reply

at 1-4.  In opposition to summary judgment, Plaintiff argues that the two earlier

proceedings do not qualify as final judgments requiring the preclusive effect Defendants

urge as to whether the necessary probable cause for entry of Plaintiff's home and his

arrest existed.  Plaintiff's Memorandum at 4-7.

In considering Defendants' contention that Plaintiff is collaterally estopped from

challenging the warrantless entry into his residence and the subsequent arrest based

on a lack of probable cause, the court looks to New York law and gives the earlier

probable cause determinations the same preclusive effect they would be given under

New York law.  *Kent v. Katz*, 312 F.3d 568, 574 (2d Cir. 2002) (citing *Migra v. Warren*

*City School District Board of Education*, 465 U.S. 75, 81 (1984); and *Kremer v.*

*Chemical Construction Corp.*, 456 U.S. 461, 481-83 (1982)).  *See also* 28 U.S.C. §

1738 (requiring a federal court give the same preclusive effect that a state court would

to a state "judicial proceeding.").  "The doctrine fo collateral estoppel, a narrower

species of *res judicata*, precludes a party from relitigating in a subsequent action or

proceeding an issue clearly raised in a prior action or proceeding and decided against

that party or those in privity."  *Ryan New York Telephone Company*, 467 N.E.2d 487,

490 (N.Y. 1984) (citing cases).  "What is controlling is the identity of the issue which has

necessarily been decided in the prior action or proceeding."  *Ryan*, *supra*, at 490.

Among the specific factors to be considered in determining whether a party is

collaterally estopped from asserting a particular claim "are [1] the nature of the forum

and the importance of the claim in the prior litigation, [2] the incentive and initiative to

litigate and the actual extent of litigation, [3] the competence and expertise of counsel,

[4] the availability of new evidence, [5] the differences in the applicable law and [6] the

foreseeability of future litigation."  *Id*. at 491 (bracketed material added).  Nevertheless,

where the party against whom collateral estoppel is asserted claims he was not

afforded a full and fair opportunity in the prior proceedings to contest the decision now

said to be controlling, he must be allowed to do so.  *Ryan*, *supra*, at 490-91.

   Significantly, under New York law, "the doctrine of collateral estoppel is

applicable 'to the quasi-judicial determinations of administrative agencies when

rendered pursuant to adjudicatory authority of an agency to decide issues brought

before its tribunals employing procedures substantially similar to those used in a court

of law.'" *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 46 (2d Cir. 1985)

(quoting *Ryan*, *supra*, at 489-90).  Moreover, under New York law, preclusive effect

would be given to the ALJ's finding in the course of the DMV's license revocation hearing that, pursuant to N.Y. Vehicle & Traffic Law § 1194, Plaintiff's license should be revoked following Plaintiff's arrest and refusal to submit to chemical testing for intoxication, despite being warned of the consequences of such refusal.  *Zanghi*, *supra*, at 46.  *See also Janendo v. Town of New Paltz Police Department*, 621 N.Y.S.2d 175, 178 (App. Div. 3d Dept. 1995) (holding determinations of ALJ in DMV license hearing proceeding and of town justice in preliminary hearing that probable cause existed to support the arrest of motorist for driving while intoxicated collaterally estopped motorist from maintaining malicious prosecution claim despite fact charge was eventually dismissed in the interest of justice based on doubt as to motorist's intoxication and the subsequent dismissal of the charge did not in any way vacate or reverse the earlier probable cause findings by either the ALJ or the town justice).

Similarly, in the instant case, Justice Kmiotek's determination following the *Payton* hearing found not only probable cause justifying Plaintiff's warrantless arrest, but also probable cause and exigent circumstances justifying the police officers' warrantless entry into Plaintiff's residence.  The issue of the warrantless entry and arrest was also considered at Plaintiff's August 7, 2002 DMV license revocation hearing, following which ALJ Ciotuszynski separately found probable cause and revoked Plaintiff's license and driving privileges.

Because Plaintiff was acquitted of all charges following trial, Plaintiff was never presented with an opportunity to appeal Judge Kmiotek's pretrial determination following the *Payton* hearing that probable cause supported Plaintiff's arrest, thus begging the question whether Plaintiff was afforded a full opportunity to litigate the

issue in the criminal proceedings.  Significantly, however, Plaintiff could have, but chose not to commence an Article 78 proceeding challenging his license revocation pursuant to New York Civil Practice Law and Rules Article 7800.  Plaintiff's Memorandum at 7. Rather, Plaintiff maintains that because the one year loss of his driver's license and driving privileges would have largely elapsed before Plaintiff could have successfully litigated an Article 78 proceeding, Plaintiff had "little, if anything, to gain from commencing an Article 78 proceeding."  *Id*.  Plaintiff, however, is mistaken as had he prevailed on an Article 78 proceeding, ALJ Ciotuszynski's probable cause finding would have been vacated and, thus, unable to collaterally estop Plaintiff's litigation as to probable cause to arrest.

Plaintiff's reliance, Plaintiff's Memorandum at 1-2, on *Welsh v. Wisconsin*, 466 U.S. 740 (1983), in opposing summary judgment is also without merit.  In particular, Plaintiff cites *Welsh* in support of his argument that the "hot-pursuit" exception to the arrest warrant requirement does not apply in a case where, as here, law enforcement officers invade a person's bedroom to effect a warrantless arrest for non-criminal traffic offenses.  *Id*. (citing *Welsh*, *supra*).  In the instant action, however, the "hot-pursuit" exception is not only inapplicable, but also was not relied upon by either Judge Kmiotek or ALJ Ciotuszynski in finding probable cause existed to support both the warrantless entry into Plaintiff's residence and Plaintiff's warrantless arrest.  Rather, both Judge Kmiotek and ALJ Ciotuszynski found the requisite probable cause existed based on exigent circumstances, including the possibility that Plaintiff, whom an eyewitness described as appearing intoxicated, and that Officer Ziemba heard a loud noise as though someone had fallen to the floor immediately prior to the entry of Plaintiff's

15

residence by Defendant Police Officers, may have been injured and in need of assistance inside Plaintiff's residence.  DMV License Revocation Hearing Transcript, Plaintiff's Exh. E, at 32-37.

The existence of probable cause justifying Plaintiff's arrest has thus been fairly determined by both Justice Kmiotek and the ALJ and, despite Plaintiff's eventual acquittal on all charges in violation of New York's Vehicle and Traffic Law, and the earlier probable cause determinations preclude further litigation on the issue.  *Zanghi*, *supra*, at 46; *Janendo*, *supra*, at 178.  Because the existence of probable cause necessary to support Plaintiff's arrest also is a complete defense to Plaintiff's claims for false arrest, false imprisonment and malicious prosecution, *Zanghi*, *supra*, at 46, summary judgment on those claims should be GRANTED in favor of Defendants.[5]


### B.      Fourteenth Amendment Due Process

Defendants seek summary judgment on Plaintiff's claim that he was denied due process in violation of the Fourteenth Amendment, arguing that Plaintiff has failed to establish any facts demonstrating the denial of any procedural due process. Defendants' Memorandum at 17.  Plaintiff does not respond to this argument other than asserting that the validity of Plaintiff's § 1983 claims turns on the lawfulness of Plaintiff's arrest.  Plaintiff's Memorandum at 8.

Because the record conclusively establishes that Plaintiff's arrest was lawful,

---

[5] Because Plaintiff is collaterally estopped from asserting his challenge to the warrantless entry and the warrantless arrest, the court does not consider Plaintiff's assertion that Officer Dorobiala's testimony regarding being able to see into Plaintiff's home through the front screen door is false because the front door to Plaintiff's residence had a mirrored storm door, rather than a screen door, created a triable issue of exigent circumstances.  *See* Regent Affidavit, *passim*.

there is no merit to Plaintiff's procedural due process claim.  As such, summary

judgment on Plaintiff's denial of procedural due process claim should be GRANTED.

### C.      Fourteenth Amendment Equal Protection Claim

Defendants move for summary judgment on Plaintiff's Fourteenth Amendment

Equal Protection Claim on the basis that Plaintiff has failed to establish purposeful

discrimination or that a government official deliberately misinterpreted a statute against

a plaintiff, and then targeted the plaintiff in applying the misinterpreted statute.

Defendants' Memorandum at 17-18.  In opposition to summary judgment on his equal

protection claim, Plaintiff asserts only that the validity of Plaintiff's § 1983 claims turns

on the lawfulness of Plaintiff's arrest.  Plaintiff's Memorandum at 8.

A claim of violation of equal protection by selective enforcement of the law has

two elements, including "(1) the person, compared with other similarly situated, was

selectively treated; and (2) that such selective treatment was based on impermissible

considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person." *LaTrieste Rest.*

*& Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994).  Although in

the instant case Plaintiff does not allege membership in any protected group, such

membership is not required to prevail on an equal protection claim provided the plaintiff

establishes (1) that he has been intentionally treated differently from others similarly

situated and (2) no rational basis exists for the difference in treatment.  *Village of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Nevertheless, in the instant case, the

record is devoid of any evidence suggesting that Plaintiff was treated differently from

any other similarly situated individuals, let alone that no rational basis supported any different treatment.

As such, summary judgment on Plaintiff's equal protection claim should be GRANTED.


### D.    Claims against Municipal Defendants

Defendants' seek summary judgment of Plaintiff's § 1983 claims against the municipal Defendants Town and Police Department on the basis that Plaintiff has failed to point to any evidence sufficient to impose liability against such Defendants. Defendants' Memorandum at 18-19.  Plaintiff has not responded to this argument.

Insofar as Plaintiff's § 1983 claims are asserted against the Municipal Defendants Town and Police Department, such claims are without merit absent any evidence that the Town and Police Department created and maintained a custom or policy of illegal intrusions, arrests, imprisonment and prosecution.  *See Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 604 (1978) (requiring plaintiff seeking to hold municipality liable under § 1983 to identify a municipal "policy" or "custom" causing the plaintiff's injury.).  Plaintiff's conclusory assertions in the Complaint that the municipal Defendants Town and Police Department did create and maintain such policy or custom, Complaint ¶¶ 16, 21 and 24, are, without more, insufficient to defeat summary judgment.  *Nora Beverages*, *supra*, at 742.

Summary judgment on Plaintiff's claims against municipal Defendants Town and Police Department should be GRANTED.

2.     **State Claims**

   A.     **Intentional Torts**

As noted, Plaintiff alleges the intentional torts of false arrest, false imprisonment, malicious prosecution as the basis for his § 1983 claims, as well as under state common law.  The elements of such claims, however, are identical to their federal constitutional counterparts.  *See Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (false arrest and imprisonment); *Cook v. Sheldon*, 41 F.3d 73, 79-80 (2d Cir. 1994) (malicious prosecution and abuse of process).  Moreover, "[i]t is abundantly clear that a finding of probable cause [supporting Plaintiff's arrest] will defeat state tort claims for false arrest, false imprisonment and malicious prosecution."  *Zanghi*, *supra*, at 45 (citing *Feinberg v. Saks & Co.*, 443 N.Y.S.2d 26 (App. Div. 2d Dep't. 1981)) (bracketed text added).  As such, assuming Chief Judge Arcara agrees that the decisions rendered following both the *Payton* hearing and the DMV license revocation hearing that Plaintiff's arrest was supported by probable cause collaterally estops further litigation on the issue in the instant case, then summary judgment in favor of Defendants should also be GRANTED as to Plaintiff's claims under New York law for false arrest, false imprisonment and malicious prosecution.


   B.     **New York Constitution Article 1, §§ 6 and 12**

Plaintiff maintains Defendants' violated his rights under the New York Constitution Art. 1, §§ 6 (" Article 1, § 6") and 12 ("Article 1, § 12") to be free from unreasonable searches and seizures.  Complaint ¶ 31(a) and (b).  Article 1, § 6, however, is relevant only insofar as it provides for due process of law with regard to

criminal proceedings.  As such, similar to § 1983, Article 1, § 6 provides that the method of vindication for state rights conferred elsewhere is an action in the New York Court of Claims.  *Brown v. State*, 674 N.E.2d 1129, 1133-34 (N.Y. 1996).  Furthermore, Article 1, § 12 provides protection from unreasonable search and seizure identical to the Fourth Amendment.  *People v. Harris*, 570 N.E.2d 1051, 1053 (N.Y. 1991).  As such, Plaintiff's claim under Article 1, § 12 fails for the same reasons Plaintiff's claims under the Fourth Amendment fails.  Discussion, *supra*, at 12-15.

Summary judgment should be GRANTED in favor of Defendants as to these claims.


### C.    Negligence

Defendants seek summary judgment on Plaintiff's general negligence claim, arguing that under the circumstances of the case, New York law does not provide for recovery under a broad principle of general negligence; rather, Plaintiff may seek recovery only through the traditional tort remedies of false arrest, false imprisonment and malicious prosecution.  Defendants' Memorandum at 22.  Defendants alternatively argue Plaintiff has failed to establish any negligent conduct by Defendants.  *Id*. at 22-23.  Plaintiff has not responded to Defendants' arguments.

Courts within New York have consistently held that where the underlying conduct on which a negligence claim is based rests on an arrest, imprisonment and prosecution of the plaintiff, the "[p]lainitff may not recover under broad principles of general negligence, . . . but must proceed by way of traditional remedies of false arrest and imprisonment and malicious prosecution."  *Boose v. City of Rochester*, 421 N.Y.S.2d

740, 744 (App. Div. 4th Dep't. 1979) (citing cases and holding that plaintiff who was arrested for two crimes apparently committed by others could not recover from city under broad general negligence principles but was required to pursue traditional intentional tort remedies for false arrest, false imprisonment and malicious prosecution). *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (observing that New York law does not provide for recovery under general negligence principles for a claim that law enforcement officials failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution).

Furthermore, insofar as Plaintiff asserts a claim for negligent training of the Defendant police officers, claim requires Plaintiff establish that the training provided by the Town and the Police Department was so inadequate as to reflect "deliberate indifference" to the rights of those persons with whom the defendant employees come into contact. *Canton v. Harris*, 489 U.S. 378, 388 (1989). Again, Plaintiff points to no evidence tending to establish such element of the claim but, rather, relies on mere conclusory allegations which are insufficient to avoid summary judgment. *Nora Beverages, supra*. As such, summary judgment on this aspect of Plaintiff's negligent training claim should be GRANTED in favor of Defendants.


**3.      Qualified Immunity**

Alternatively, on this record, Defendant police officers Dorobiala and Ziemba are entitled to qualified immunity. Qualified immunity shields law enforcement officials who perform discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable prison official would

have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982); *Washington Square Post No. 1212 v. Maduro*, 907 F.2d 1288, 1291 (2d Cir. 1990).  Even if the right at issue was clearly established, if it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S.194, 201-02 (2001); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996); *Van Emrik v. Chemung County Dep't of Soc. Servs.*, 911 F.2d 863, 865-66 (2d Cir.1990); *Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987).  "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir.1996) (internal quotation marks omitted).

A right is clearly established if (1) it was defined with reasonable specificity, (2) its existence has been affirmed by either the Supreme Court or the relevant court of appeals, and (3) a reasonable defendant official would have understood under the existing law that his acts were unlawful.  *Brown v. City of Oneonta, N.Y. Police Dep't*, 106 F.3d 1125, 1131 (2d Cir. 1997).  If, however, it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may be entitled to qualified immunity.  *Robison*, *supra*, 821 F.2d at 920-21.

A defendant is entitled to summary judgment based on qualified immunity if the court finds that the asserted rights were not clearly established, or "if the defendant adduces[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiff. . .

could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not violate a federally protected right." *Robison*, *supra*, 821 F.2d at 921 (internal quotation omitted).  Stated another way, a defendant is entitled to qualified immunity under the objectively reasonable standard if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

Where, however, the objective reasonableness of an officer's actions depends on disputed facts, summary judgment is properly denied.  *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991); *Brawer v. Carter*, 937 F.Supp. 1071, 1082 (S.D.N.Y. 1996).  Provided that no factual issues are disputed, the application of qualified immunity to the facts is a question of law for the court to decide.  *Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. 1990).  Accordingly, the court must evaluate whether Defendants' actions, in light of clearly established law in existence as of September 12, 2001, violated Plaintiff's civil rights.

As discussed above, there is no merit to any of Plaintiff's claims.  Rather, the circumstances by which Defendants Dorobiala and Ziemba went to Plaintiff's home include a police radio dispatch alerting them to a hit and run accident, an investigation of the scene of the accident where an eyewitness, Zelaski, reported seeing Plaintiff strike two parked vehicles, exit his own vehicle, stumble and, in slurred words, state he would pay for the damages, and then return to his vehicle, drive the short distance from the accident scene to Plaintiff's residence, and enter the home. March 21, 2002 *Payton* Hearing Decision, Defendants' Exh. C.  Upon arriving at Plaintiff's home and ringing the doorbell, knocking on the door and shouting in an attempt to elicit a response from

Plaintiff, which was not forthcoming, and then hearing a crashing noise as though someone had fallen to the floor, a reasonable police officer could have suspected that the occupant of the residence had fallen and been injured and in need of assistance, as Officer Ziemba testified at the *Payton* hearing.  *Id*.  Under these circumstances, it was objectively reasonable for Officers Dorobiala and Ziemba to believe their actions in entering Plaintiff's home did not violate Plaintiff's civil rights.

Alternatively, summary judgment should also be GRANTED as to Defendants Dorobiala and Ziemba based on qualified immunity.

## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment should be GRANTED; the Clerk of the Court should be directed to close the case.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 28, 2007
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        February_28, 2007
              Buffalo, New York